IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHANDRA GIPSON, | § |
| Plaintiff | § § § |
| v. | § Civil Action No. 3:10-CV-1413-BK § |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | § § § |
| Defendant. | § § |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 16), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, the Plaintiff's *Motion for Summary Judgment* (Doc. 23) is **DENIED**, and the Defendant's *Motion for Summary Judgment* (Doc. 24) is **GRANTED**.

### I. BACKGROUND[1]

**A.    Procedural History**

Chandra Gipson (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act. In July 2006, Plaintiff filed for SSI and DIB, claiming that she had been disabled since May 2006 due to depression and bipolar/mood disorder. (Tr. at 128, 134, 165). Her application was denied initially and on

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55-67, 69-87). She personally appeared with counsel and testified at a hearing held in March 2009. (Tr. at 29-51). In June 2009, the ALJ found Plaintiff not disabled. (Tr. at 17-25). In April 2010, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1, 3-5, 9). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.** **Factual History**

   **1.** **Age, Education, and Work Experience**

Plaintiff was 47 years old at the time of the administrative hearing and had a high school education. (Tr. at 29, 32). She had past relevant work experience as a cook, medical assistant, and teacher's assistant. (Tr. at 150).

   **2.** **Medical Evidence Before the ALJ**

In various daily activity questionnaires, Plaintiff reported that she was depressed, she had difficulty concentrating and staying focused, it took her a long time to pick out clothes and get out of bed each day, and her friends and family cooked her meals, drove her around town, and managed her money. (Tr. at 176-179, 202, 204-05, 213, 219-22). Plaintiff also reported having insomnia, racing and angry thoughts, and an inability to remember things without writing them down. (Tr. at 202, 205-06, 224).

Plaintiff's medical records indicated that in April, May, and July 2006, she sought treatment at Lifenet Community Behavioral Healthcare, with the goals of learning stress reduction skills, budgeting skills, taking medicine as prescribed, learning socializing skills, and

applying for DIB benefits. (Tr. at 241-43, 250, 253). She reported to the doctor in July 2006 that she had been sober for a month following a bout with cocaine addiction, but she was irritable and depressed and had lost her job. The doctor diagnosed her as bipolar and prescribed her medication. (Tr. at 246-49). Plaintiff's therapist indicated that Plaintiff had poor coping skills and cognitive functioning problems, but Plaintiff reported that she wanted to find a job. (Tr. at 251-52, 296). In October 2006, Plaintiff's doctor at NorthSTAR Outpatient Clinic noted that Plaintiff had been off her prescription medication since July 2006, had been using crack cocaine, and was depressed. (Tr. at 274-75). Her therapist at LifeNet reported in October 2006 that Plaintiff needed to learn coping mechanisms and was making little progress in her treatment. (Tr. at 292).

A government doctor completed a Psychiatric Review Technique in November 2006, indicating that Plaintiff had (1) a substance abuse disorder, (2) bipolar disorder, and (3) depression, but there was insufficient evidence to determine whether she had any functional limitations or met one of the Listings. (Tr. at 254-265). In December 2006, the treatment notes at NorthSTAR indicate that Plaintiff was diagnosed with cocaine dependence, although she claimed to have been sober for one week; her overall functioning level was 5 on a scale of 10, she was living in a homeless shelter, had discontinued her prescription medication, and had come to the clinic to get medication and supporting paperwork for her DIB application. (Tr. at 270-71, 273, 283-85). She also wanted to quit using drugs and enter a drug rehabilitation program. (Tr. at 287, 289-90).

By December 2006, Plaintiff had been jailed for food stamp fraud. (Tr. at 587). She subsequently was diagnosed by prison medical staff as having bipolar disorder and mild

3

depression and was given medication. (Tr. at 304, 310, 587). In June 2007, it was noted that Plaintiff was taking an anti-depressant and was feeling better, although she still suffered from very mild anxiety and depression. (Tr. at 312-13).

In October 2007, a psychologist assessed Plaintiff for purposes of determining her eligibility for DIB and noted that she appeared to be very distractible and forgetful, her thinking was coherent but dull, and she had difficulty following detailed instructions. (Tr. at 320-21). She tested positive for cocaine use in November 2007. (Tr. at 360). A December 2007 Psychiatric Review Technique form indicated that Plaintiff had bipolar and mood disorders and had moderate limitations in social functioning and maintaining concentration, persistence or pace, but did not meet any of the Listings, and the alleged limitations caused by her symptoms were not fully supported by the evidence of record. (Tr. at 340, 347, 349).

Similarly, Plaintiff's mental Residual Functional Capacity (RFC) assessment completed by the same psychologist indicated that she was markedly limited in understanding, remembering, and carrying out detailed instructions and was moderately limited in maintaining concentration for long periods, working with others, completing a normal workweek without interruption from her problems, accepting instructions and criticism, getting along with co-workers, and responding appropriately to changes in the work setting. (Tr. at 352). In the narrative portion of his assessment, however, the psychologist concluded that Plaintiff could remember and carry out simple instructions, make simple decisions, attend and concentrate for long periods, interact adequately with people, and respond to change as needed. (Tr. at 353).

Plaintiff continued mental health treatment and received medication for depression, irritability, anger, inability to interact effectively with others, and bipolar disorder at Metrocare

4

Services from February 2008 through January 2009. (Tr. at 364-539). She lived in an apartment paid for by her son and reported that she had no need or desire to work since she was waiting for her DIB. (Tr. at 379-82).

### 3. Hearing Testimony

At her hearing before the ALJ, Plaintiff testified that she could not work because she did not like being around people since she got too aggravated and could not concentrate. (Tr. at 39). She stated that she was able to groom herself, but her children maintained the apartment where they lived together, did the laundry, and cooked meals. (Tr. at 39-40). Plaintiff testified that she spent her whole day in bed, had no appetite, and slept badly. (Tr. at 41). Her medication only helped her a little, and she had episodes of anger and crying. (Tr. at 43, 46).

A vocational expert (VE) next testified, based on the ALJ's hypothetical, that an individual with Plaintiff's "age, education and experience who's limited to simple work in which interaction with the public and co-workers is no more than incidental," would be able to perform various jobs in the national economy, such as laundry worker, hand packer, and cleaner. (Tr. at 52). Upon further questioning by Plaintiff's attorney, the VE testified that Plaintiff was not employable if she was limited by 20% in her abilities to maintain attention, complete a normal work week without interruptions from her symptoms, perform at a consistent pace without excessive breaks, accept instructions and criticism, and respond appropriately to changes in the work environment. (Tr. at 53).

### C. The ALJ's Findings

In June 2009, the ALJ ruled that Plaintiff was not entitled to an award of DIB and SSI, even though she had the severe impairments of mood disorder and history of cocaine

dependence, because Plaintiff did not have (1) marked restriction in her activities of daily living, (2) marked difficulties in maintaining social function or concentration or pace, or (3) repeated episodes of decompensation of extended duration. (Tr. at 19-20). Rather, the ALJ found, Plaintiff had mild restriction in her daily activities as evidenced by her ability to attend to her personal care and shop. Similarly, Plaintiff had only moderate difficulties in social activities insofar as the medical evidence demonstrated that she did not like being around people and was often irritable and angry. (Tr. at 20-21). Next, the ALJ found that Plaintiff had only moderate difficulty with regard to concentration, persistence or pace in that Plaintiff's records indicated she had difficulty following complex instructions. Further, the ALJ noted that Plaintiff had no episodes of decompensation. (Tr. at 21).

After considering Plaintiff's mental issues further, the ALJ concluded that she had the RFC to perform a full range of simple, unskilled work activities, so long as her interaction with people was incidental to the performance of her duties. (Tr. at 21-23). The ALJ noted that Plaintiff's mental problems and anger issues had improved with treatment and medication, and she reportedly enjoyed reading, indicating that she was able to concentrate and focus. (Tr. at 23). Even if Plaintiff's ability to concentrate was impaired, the ALJ determined that she still could carry out short simple instructions and remember the work procedures entailed in unskilled work. (Tr. at 23). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, she could do other jobs in the national economy as testified to by the VE. (Tr. at 24-25).

## II. ANALYSIS

A. **Legal Standards**

    1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the SSI program are identical to those governing the determination of eligibility under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id*. *passim*.

    2. **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the

burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by expert vocational testimony or by reference to the Medical-Vocational Guidelines of the regulations, as long as the claimant either suffers from only exertional impairments or his non-exertional impairments do not significantly affect his RFC. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In cases where mental impairment is at issue, the Commissioner uses an additional technique, which requires that the ALJ first rate the degree of the claimant's limitations from each mental impairment in four broad functional areas, and use those ratings to determine the severity of each impairment. If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a mental disorder in the Listing of Impairments. 20 C.F.R. pt. 404, Subpt. P, App. 1, 12.00-12.09; 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe, but does not reach the level of a listed disorder, as the ALJ found in this case, then the ALJ must conduct an RFC assessment. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). Violation of these provisions constitutes reversible error only when a reviewing court concludes that the error is not harmless. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

**B.   Issues for Review**

    **1.   Whether the ALJ's RFC Finding is Supported by Substantial Evidence**

Plaintiff first contends that the ALJ's RFC finding is not supported by substantial

evidence because, despite the state agency psychologist's detailed findings, the ALJ limited Plaintiff's RFC only by the ability to perform simple, unskilled activities and to have only incidental interaction with others in the performance of her job duties. (Doc. 23 at 5). Plaintiff maintains that the ALJ's RFC finding did not accommodate for Plaintiff's moderate limitations in accepting and responding to supervisors as well as in concentration and persistence. (*Id.* at 5-6). Plaintiff contends that her difficulties understanding, carrying out and remembering simple instructions were only a few of many other factors that the ALJ should have considered, such as her problems dealing with changes in the work setting, responding appropriately to supervisors and co-workers, and understanding and remembering simple instructions. (*Id.* at 6).

The government responds that the Social Security regulations do not require that the Commissioner, in determining the claimant's RFC, specifically address each individual activity or skill in which the reviewing doctor determines that the claimant is limited. (Doc. 25 at 4-5). Rather, the government argues, the ALJ must use the doctor's narrative assessment in addressing the claimant's RFC and, in this case, the state agency doctor's narrative stated that "[c]laimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers, and respond appropriately to changes in routine work setting." (*Id.* at 5). The government thus concludes that the ALJ properly determined that Plaintiff's RFC was limited to unskilled work involving minimal interaction with others. (*Id.* at 6-7) (quoting *Programs Operations Manual System* (POMS) DI 25020.010(B)(1)).[2]

The RFC is an assessment, based upon all of the relevant evidence, of a claimant's

---

[2] POMS can be located at http://secure.ssa.gov/poms.nsf/home!readform

remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f). Under the Commissioner's POMS governing mental limitations, a psychologist assessing a claimant must complete a Mental RFC Assessment. This form contains a "summary conclusions" section, which is a worksheet on which the doctor uses check-boxes to indicate the claimant's degree of limitation for sustaining various mental activities in a work setting. POMS, DI 25020.010B.1; (Tr. at 351-52). The Mental RFC Assessment form also contains a narrative section wherein the psychologist provides a summary functional capacity assessment. (Tr. at 353). Under the applicable POMS, the ALJ must assess a claimant's RFC by using this narrative to decide the claimant's ability to meet the mental demands of work. POMS, DI 25020.010B.1.

In this case, the state agency psychologist concluded in the narrative portion of the Mental RFC Assessment form that Plaintiff could remember and carry out simple instructions, make simple decisions, attend and concentrate for long periods, interact adequately with people, and respond to change as needed. (Tr. at 353). The ALJ then ruled that Plaintiff had the RFC to perform a full range of unskilled work so long as her interaction with people was limited. The ALJ further noted that Plaintiff was able to concentrate and focus, based on her ability to read books, and even if her concentration was impaired, she still could carry out short simple instructions and remember work procedures entailed in unskilled work. (Tr. at 21-23). The ALJ's RFC assessment closely tracks the language in the consultative psychologist's narrative and thus is supported by substantial evidence. *Greenspan*, 38 F.3d at 236; POMS, DI 25020.010B.1.

## 2. Whether the ALJ's Finding that Plaintiff Can Perform Work in the National Economy is Supported by Substantial Evidence

Plaintiff next argues that the ALJ's hypothetical to the VE was insufficient because the hypothetical did not include (1) many of Plaintiff's limitations in the areas of concentration, persistence, and pace and (2) Plaintiff's limited ability to work with others, all as recognized by the state consulting psychologist. (Doc. 23 at 8). Essentially, Plaintiff argues that the ALJ's hypothetical did not list all of the limitations found by the consultative psychologist and was limited to only those points noted in the narrative portion of the psychologist's Mental RFC Assessment. (*Id.*). The government responds that the ALJ submitted a correct RFC to the VE, and the hypothetical reasonably incorporated the impairments the ALJ recognized. (Doc. 25 at 7).

When hearing VE testimony, an ALJ should pose a hypothetical question that reasonably incorporates all the disabilities that the ALJ has found. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). If the hypothetical question the ALJ poses to the VE is defective because the ALJ failed to incorporate reasonably all disabilities of the claimant recognized by the ALJ, a determination of non-disability based on the VE's answer to the defective question is not supported by substantial evidence and cannot stand. *Id.* at 436 (reversing where the ALJ had misstated in his hypothetical the amount of weight that he had found the claimant could lift and mischaracterized the condition of the claimant's kidneys, which doctors had said were causing long term problems that would likely hamper claimant's performance of routine physical activities).

In the case at bar, the ALJ asked the VE whether a hypothetical claimant with Plaintiff's

12

"age, education and experience who's limited to simple work in which interaction with the public and co-workers is no more than incidental," would be able to perform various jobs in the national economy. (Tr. at 52). This question closely tracks the ALJ's RFC assessment in which she found that Plaintiff could perform a full range of simple, unskilled work activities so long as her interaction with people was incidental to the performance of her duties. (Tr. at 21-23). Because the ALJ posed a hypothetical question that reasonably incorporated the disabilities she found Plaintiff had, the ALJ's finding that Plaintiff could perform other jobs in the national economy was supported by substantial evidence. *Bowling*, 36 F.3d at 436.

### III. CONCLUSION

For the foregoing reasons, the undersigned **DENIES** Plaintiff's *Motion for Summary Judgment* (Doc. 23) and **GRANTS** Defendant's *Motion for Summary Judgment* (Doc. 24).

**SO ORDERED** on February 11, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE